**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**DENNIS RODEN,**

       **Plaintiff,**

                           **Civil Action 2:20-cv-4983**
   **v.**                          **Judge Edmund A. Sargus, Jr.**
                               **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL
SECURITY,**

       **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Dennis Roden, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for social security child disability insurance benefits and supplemental security income.  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 15), the Commissioner's Memorandum in Opposition (ECF No. 16), Plaintiff's Reply (ECF No. 17), and the administrative record (ECF No. 12).  For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's nondisability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

## I.  BACKGROUND

Plaintiff filed his applications for child disability insurance benefits and for supplemental security income in February 2018, alleging that he has been disabled since November 30, 2013, due to autism (possible Asperger's Syndrome) and depression.  (R. at 279-85, 287-92, 306.) Plaintiff's applications were denied initially in June 2018 and upon reconsideration in August

2018.  (R. at 185-211.)  Plaintiff sought a *de novo* hearing before an administrative law judge.

(R. at 212-14.)  Administrative Law Judge Noceeba Southern (the "ALJ") held a hearing on

August 21, 2019, at which Plaintiff, who was represented by counsel, appeared and testified.  (R.

at 36-86.)  A lay witness, David Seif, along with a Vocational Expert ("VE") also appeared and

testified.  (*Id.*)  On September 9, 2019, the ALJ issued a decision finding that Plaintiff was not

disabled within the meaning of the Social Security Act.  (R. at 16-35.)  The Appeals Council

denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final

decision.  (R. at 1-7.)

## II.   HEARING TESTIMONY

The ALJ summarized Plaintiff's reports to the agency and his relevant hearing testimony

as follows:

> In a March 26, 2018 Function Report[,] [Plaintiff] endorsed problems with talking,
> climbing stairs, memory, completing tasks, concentration, understanding, and
> getting along with others. He indicated he was highly stressed and unable to talk or
> explain himself when in a confrontational situation. He further claimed his
> weaknesses made it difficult for him to interact effectively with superiors and
> limited his ability to produce work efficiently or timely. [Plaintiff] also noted he
> felt depressed on a daily basis and obsessed over small or irrelevant details that
> were not critical or important.
>
> At the hearing, [Plaintiff] testified that the biggest reasons or problems he had that
> were preventing him from doing a simple, full time job were his troubles socializing
> and interacting with others, his difficulty with organization, and because he would
> have to get up early in the morning and he basically could not get up before 8 am.
> He further testified that he would get nervous or agitated and needed to "get out of
> my head" he would get up and take a walk, 4-5 a day when he had been working,
> and 2-3 walks a day currently. He also testified that he had had a rough spring and
> had been suicidal as he had been treading water financially, feeling weak, and not
> doing well spiritually. He further testified that he had seen Dr. Saimantel for about
> 2-3 months after that which included residing in a facility. Regarding current mental
> health treatment, [Plaintiff] testified that seeing a counselor once a week and a
> doctor once a month for medication at Scioto Paint Valley Mental Health Center
> (SPVMHC) was helpful. He also indicated that he found taking Zoloft helpful.

(R. at 25-26 (internal citations omitted).)

### III.    MEDICAL RECORDS

The ALJ summarized the relevant medical records concerning Plaintiff's impairments as

follows:

> [Plaintiff's] history is significant for autism spectrum disorder and major depressive disorder, recurrent. Moreover, he has endorsed occasional suicidal thoughts, feelings of hopelessness and helplessness, anxiousness, depressive symptoms; and mental status examinations have found depressed mood and affect, slowed responses to questions, and poverty of speech at times. Additionally, [Plaintiff] was psychiatrically hospitalized from February 26, 2018 through March 1, 2019 for suicidal ideation and attempt.

> *** [Plaintiff] reported on December 20, 2017 that his primary care physician had prescribed Zoloft; treatment notes show he had not started the medication because he and his family were worried about any possible side effects it could cause until what appears to be February 26, 2019, the date he sought emergency treatment for suicidal behavior and reported he had not begun taking his Zoloft because he was afraid of it. Moreover, [Plaintiff] described his condition as stable despite some depressive symptoms on several occasions during the period he had not been taking any medication. For example, he presented as calm and with a sense of humor on December 20, 2017. While he was anxious on January 23, 2018 his mood was euthymic and affect congruent. His mood was euthymic and affect congruent again on February 2, 2018. While [Plaintiff] reported he was still struggling with depression on February 8, 2018, his behavior was appropriate and he stated he was doing okay. His mood was euthymic and affect congruent. While he endorsed continued depression on June 26, 2018, he stated he thought he was okay overall. Mental status examination found his mood euthymic and affect congruent. December 27, 2018 treatment notes show he was currently stable despite feeling depressed at times. He specifically denied anxiety and depression and his mood was normal and affect appropriate.

> As noted above, [Plaintiff] was psychiatrically hospitalized on February 27, 2019 after presenting to the emergency room for suicidal thought and behavior. While he was hospitalized [Plaintiff] began taking Sertraline and Risperdal, and was discharged on March 1, 2019 after his thoughts of self-harm resolved, his thinking cleared, he was more focused and able to maintain a conversation effectively, and his mood, anxiety, and sleep all improved. Subsequent treatment notes show that therapy and medications were relatively effective in controlling [Plaintiff]'s symptoms. In fact, he reported that he was no longer struggling with his emotions and that he was doing the best he has ever done on his discharge from his psychiatric hospitalization. Consistent with his testimony, the record documents his inpatient hospitalization from March 4, 2019 through May 17, 2019 at the Floyd Simantel clinic after his psychiatric hospitalization, where he actively participated in groups and complied with all aspects of his treatment plan. His discharge report shows he

3

had made progress in managing his symptoms, but continued to struggle with anxieties and obsessive thought processes and would need to continue individual therapy on a weekly basis for the foreseeable future to manage his symptoms and reduce stress. Subsequent treatment notes show that therapy and medications were relatively effective in controlling [Plaintiff's] symptoms. Progress notes from Scioto Paint Valley Mental Health Center (SVPMHC) show that his medications have continued to be relatively effective in controlling [Plaintiff's] symptoms. On May 13, 2019, [Plaintiff] related to his treating nurse practitioner that he should have started taking his medication when he had told him to. He denied any thoughts of self-harm; and while he endorsed anxiety and depression, mental status examination found his mood normal and affect appropriate. His nurse practitioner diagnosed atypical pervasive developmental disorder, generalized anxiety disorder, and moderate episode of recurrent major depressive disorder. He presented with pleasant mood and congruent affect on June 5, 2019. Moreover, he stated that everything had been going pretty good. His mood was euthymic, affect congruent, and he reported he had been feeling pretty good on June 12, 2019.

(R. at 26-27 (internal citations omitted).)

## IV.    ADMINISTRATIVE DECISION

On September 9, 2019, the ALJ issued her decision.  (R. at 16-35.)  The ALJ found that

Plaintiff had not attained the age of 22 as of November 30, 2013, the alleged onset date.  (R. at

22.)  At step one of the sequential evaluation process, the ALJ found that Plaintiff has not

engaged in substantially gainful activity since November 30, 2013, the alleged onset date.  (*Id*.)

The ALJ found that Plaintiff had the severe impairments of autism and major depressive disorder.

(*Id*.)  She further found that Plaintiff did not have an impairment or combination of impairments

that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404,

Subpart P, Appendix 1.  (R. at 23.)  At step four of the sequential process, the ALJ set forth

Plaintiff's residual functional capacity ("RFC") as follows:

After careful consideration of the entire record, [the ALJ] finds that the [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he should avoid interaction with the public; should be able to tolerate occasional but superficial interaction with coworkers and supervisors, superficial being that which is beyond the performance of job duties and job functioning for a specific purpose and of short duration; should

4

perform best in a position where there is no tandem work and where there are not more than occasional changes and decision making, so as to provide for low stress; and would also perform best in positions where there is more use of a computer or with computers than there is direct person to person contact. Additionally, [Plaintiff] will be off task up to 20 minutes of the day, which is included within the routine scheduled breaks and lunch period, in order to refocus himself and/or decompress.

(R. at 25.)  The ALJ then noted that Plaintiff has no past relevant work and, relying on the VE's testimony, concluded that Plaintiff can perform other jobs that exist in significant numbers in the national economy.  (R. at 29-30.)   She therefore concluded that Plaintiff was not disabled under the Social Security Act at any time since November 30, 2013, the alleged onset date.  (R. at 30.)

## V.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").   Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial

5

evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a [Plaintiff] on the merits or deprives [Plaintiff] of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.    ANALYSIS

Plaintiff puts forth three assignments of error.  First, he asserts that the ALJ committed reversible error by improperly applying the "treating source rule" to various opinions, including but not limited to the opinion of Plaintiff's treating psychiatrist, Richard Nockowitz, M.D.  (ECF No. 15 at PAGEID ## 703-707.)  Next, Plaintiff contends that the ALJ failed to properly evaluate the criteria set forth in Listing 12.04.  (*Id.* at PAGEID ## 707-710.)  Finally, Plaintiff asserts that the ALJ failed to include limitations pertaining to Plaintiff's impairments in understanding, remembering, and following information in the RFC.  (*Id.* at PAGEID ## 710-711.)  The Undersigned will address each assignment of error in turn.

### A.    The ALJ Properly Weighed the Opinion Evidence of Record.

As a preliminary matter, under the applicable regulations[1] the ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. §

---

[1] "Revisions to regulations regarding the evaluation of medical evidence went into effect on March 27, 2017, and purport to apply to the evaluation of opinion evidence for claims filed before March 27, 2017." *Smith v. Comm'r of Soc. Sec.*, No. 3:18CV622, 2019 WL 764792, at *5 n.2. (N.D. Ohio Feb. 21, 2019) (citing 82 Fed. Reg. 5844-5884 (Jan. 18, 2017)).  While Plaintiff did not file for benefits until February 2018, Plaintiff's father filed for Social Security retirement benefits on April 17, 2015 and listed Plaintiff as a dependent.  (*See* ECF No. 15 at PAGEID #

404.1527(c).  The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 404.1527(a)(1).  The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . ."  20 C.F.R. § 404.1527(c)(2); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013); *Blakley*, 581 F.3d at 408.  If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [[Plaintiff]'s] case record, [the ALJ] will give it controlling weight."  20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, then the ALJ must meet certain procedural requirements.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

---

687 (citing R. at 148, 159, 171, 180.)  Accordingly, Plaintiff's protective filing date for the subject claim was April 17, 2015, before the new regulations took effect.  (*Id.*)  The Commissioner does not dispute that the old regulations apply.  (*See* ECF No. 16 at PAGEID # 718 ("Plaintiff's protective filing date fell before March 27, 2017.").)

*Id.*  Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 404.1527(c)(2).  Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted).  The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed [Plaintiff] as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision.  *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).  Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity.  20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled

to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

Against this backdrop, Plaintiff argues that the ALJ erred in reviewing several opinions in the record.  (ECF No. 15 at PAGEID ## 703-707.)  The Undersigned will analyze these opinions in turn.

       1.       **Dr. Nockowitz.**

First, Plaintiff argues that the ALJ erred in weighing the opinion of Dr. Richard Nockowitz, Plaintiff's treating psychiatrist.  (ECF No. 15 at PAGEID ## 701-706.)  In weighing Dr. Nockowitz's opinion, the ALJ determined as follows:

> The questionnaire completed by Dr. Richard Nockowitz on July 12, 2019 has been given due consideration. **The undersigned assigns some weight to his opinion with respect to [Plaintiff's] social functioning and poor stress tolerance, and that his emotional difficulties interfered with his ability to effectively communicate with others**, as these conclusions are consistent with the objective medical evidence as a whole and supports the finding herein that [Plaintiff] has marked limitation in interacting with others. However, **the evidentiary record does not support extreme limitation in social functioning as noted by the doctor**, and is inconsistent with the medical evidence of record, [Plaintiff's] educational background, mental status examinations, and [Plaintiff's] report that he had got along with teachers and classmates. Additionally, the undersigned assigns less weight to the doctor's opinion that [Plaintiff] was indecisive and had poor memory and concentration**,** as these findings are not fully supported by his own clinical observations or totality of the evidentiary record, to which he did not have access, and are inconsistent with [Plaintiff's] completion of an undergraduate degree in Accounting. Additionally, his opinion [that] [Plaintiff's] symptoms would prevent him from being a candidate for the workforce is an area reserved to the Commissioner and therefore given no weight.

(R. at 28 (internal citation omitted, emphasis added).)  This analysis sufficiently sets forth good reasons for not affording Dr. Nockowitz's opinion controlling weight.

While Plaintiff argues that there were other portions of Dr. Nockowitz's opinion that would have supported a finding of "disabled" that the ALJ did not specifically evaluate, the

Udnersigned finds that it is Plaintiff who ignored the ALJ's clear and thorough discussion of

Plaintiff's ability to interact with others:

> In interacting with others, [Plaintiff] has marked limitations. Here, [Plaintiff] has alleged that he has difficulty engaging in social activities and getting along with others. He also claimed he was unable to talk or explain himself when in a confrontation and also struggled to ask questions for fear of confrontation and/or stress. He also noted that his social skills were limited and his weaknesses made it difficult for him to interact efficiently with superiors. However, according to his statements, he went grocery shopping in stores and to church every week. He has also reported spending time with others including with his mentor and coworkers in person at the office a couple of times per week and with family on the phone. He also indicated he was able to deal appropriately with authority (provided they were not disrespectful to him). Treatment notes show that [Plaintiff] was described as pleasant and cooperative and appeared comfortable during appointments. [Plaintiff] testified he had been involved with the campus ministry Wesley Foundation during college and went to football games. He testified that he did not have any friends outside of family or at least none that he had in numbers. He also testified that he went out to eat with his family on occasion and did okay going to the store and being around people. He also went to yard sales with his mother and could handle being around people in stores. **Further, the evidence in the record, including the testimony of [Plaintiff] at the hearing, shows that he was, for the most part, able to interact independently, appropriately, effectively, and on a sustained basis with other individuals, and there is no indication that he has not been socially appropriate with his treating or consulting sources.** Moreover, he presented to the hearing as polite and cooperative and he did not exhibit any problems interacting with the other participants or answering questions. Nevertheless, **in affording [Plaintiff] the benefit of the doubt, the undersigned finds [Plaintiff] has marked limitation in interacting with others**.

(R. at 23-24.)  In this discussion, the ALJ cited numerous examples from Plaintiff's own Social

Security Function Report (R. at 313-320) and from Plaintiff's hearing testimony (R. at 37-86)

which reflected Plaintiff's ability to interact with others, including:  grocery shopping and

attending church on a regular, weekly basis; spending time with others, including his mentor and

coworkers, in person multiple times per week; spending time with family members on the phone;

dealing appropriately with authority figures; being involved with the Wesley Foundation during

college; attending football games; going out to eat with family; going to yard sales; and handling

10

being around people in stores.  (*Id.*)  Beyond Plaintiff's own statements, the ALJ also cited Dr.

Nockowitz's own clinical notes,[2] as well as Plaintiff's educational background (including the fact

that he completed an undergraduate degree in Accounting).  (R. at 28.)  Because these findings

are inconsistent with Dr. Nockowitz's opinion that Plaintiff has extreme limitations[3] in

interactions with others, the Undersigned concludes  that the ALJ provided good reasons for

discounting Dr. Nockowitz's opinion on this issue.  (R. at 28.)

With regard to the *Wilson* factors, Plaintiff affirmatively concedes that "[t]he ALJ did

mention supportability and [consistency]."  (ECF No. 15 at PAGEID # 705.)  As the

Commissioner correctly observes, courts will "generally uphold an ALJ's decision" to discount a

treating physician's opinion that is not supported by objective evidence or is inconsistent with the

other medical record evidence.  *See Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 175-176

(6th Cir. 2009) ("Where the opinion of a treating physician is not supported by objective

evidence or is inconsistent with the other medical evidence in the record, this Court generally

will uphold an ALJ's decision to discount that opinion.") (citing cases).  The Undersigned

therefore finds no error on this issue.

---

[2] The Undersigned does not agree with the Commissioner that Dr. Nockowitz's opinion "is an inherently less useful piece of evidence" because Dr. Nockowitz used a form with check boxes. (ECF No. 16 at PAGEID # 723.)  To that end, the Undersigned agrees with Plaintiff that the case on which the Commissioner relies, *Hernandez v. Comm'r v. Soc. Sec.*, 644 F. App'x 468 (6th Cir. 2016), is not analogous to this case.  (ECF No. 17 at PAGEID # 736.)  In *Hernandez*, the physician "did not elaborate in the sections below [the check boxes] that requested 'support' for a given assessment," but here Dr. Nockowitz provided ample support for his check box findings. *Id.*, 644 F. App'x at 472.

[3] As the ALJ correctly noted, "[a] marked limitation means functioning in this areas independently, appropriately, effectively, and on a sustained basis is seriously limited," while "[a]n extreme limitation is the inability to function independently, appropriately or effectively, and on a sustained basis."  (R. at 23.)  *See also* 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.00(F)(2)(d), (e).

## 2.    Other Opinions.

Plaintiff also argues, in passing, that the ALJ improperly considered the opinions of Ms. Kinnamon (Plaintiff's therapist), Ms. Stanley (Ms. Kinnamon's nurse practitioner), Mr. Seif (Plaintiff's cousin), and Dr. Griffiths (an independent psychological evaluator).  (ECF No. 15 at PAGEID ## 706-707.)  This argument is not well taken.

First, the Commissioner is correct that, because Ms. Kinnamon and Ms. Stanley were not "acceptable medical sources" under the applicable regulations, their opinions were not entitled to any particular weight or deference.  *See Noto v. Comm'r of Soc. Sec.*, 632 F. App'x 243, 248-249 (6th Cir. 2015) ("[N]urse practitioners, therapists, and the like are 'non-acceptable medical sources.' The opinion of a 'non-acceptable medical source' is not entitled to any particular weight or deference—the ALJ has discretion to assign it any weight he feels appropriate based on the evidence of record.") (citing 20 C.F.R. § 404.1513(d)(1); *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 530 (6th Cir. 1997); *Engebrecht v. Comm'r of Soc. Sec.,* 572 Fed.Appx. 392, 397–98 (6th Cir. 2014)).  Accordingly, the Undersigned rejects Plaintiff's suggestion that the ALJ's failure to "acknowledge that [Plaintiff] treated with Ms. Kinnamon weekly and with Ms. Stanley monthly" constituted reversible error.  Rather, the ALJ appropriately explained the weight she afforded to these opinions, and that the ALJ's decision was supported by substantial evidence.  (*See* R. at 28.)

As for Mr. Seif's lay opinion, the Court agrees with Plaintiff that the ALJ failed to articulate the weight given to Mr. Seif's opinion but finds this to be harmless error.  As Plaintiff identified, the applicable regulation reads in relevant part as follows:

> The adjudicator generally should explain the weight given to opinions from these
> sources or otherwise ensure that the discussion of the evidence in the determination

12

or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, **when such opinions may have an effect on the outcome of the case**.

20 C.F.R. § 404.1527(f)(2) (emphasis added). Here, the issue before the Court is whether the ALJ properly found that Plaintiff has marked limitations in interacting with others. To this point, the ALJ noted that Mr. Seif testified that "he had seen [Plaintiff] walking all over town." (R. at 26.) This evidence only supports the ALJ's finding of a marked, rather than extreme, limitation in social functioning. Under these circumstances, the Undersigned sees no reason to suspect that a different outcome would result from further discussion of Mr. Seif's opinion.

Finally, with regard to Dr. Griffiths' opinion, the Undersigned agrees with the Commissioner that Plaintiff "points to no error in the ALJ's analysis." (ECF No. 16 at PAGEID # 726.) Rather, Plaintiff simply suggests that "it is not logical for the ALJ to have given significant weight to a non-treating physician, especially given the significant events that happened after the opinion was issued." (ECF No. 15 at PAGEID # 707.) The Undersigned disagrees, and finds that the ALJ's discussion of Dr. Griffiths' opinion sufficiently explained the bases for his analysis of Dr. Griffiths' opinion, and that the ALJ's explanation enjoys substantial support in the record. (R. at 28.) Accordingly, for these reasons Plaintiff's first statement of error is not well taken.

**B.     The ALJ Properly Determined that Plaintiff Does Not Meet Listing 12.04.**

The next issue before the Court is whether the ALJ erred in assessing that Plaintiff does not meet Listing 12.04. (*See* ECF No. 15 at PAGEID ## 707-710.) To satisfy Listing 12.04, Plaintiff must have an impairment as follows:

*Depressive, bipolar and related disorders*, satisfied by A and B, or A and C:

A. Medical documentation of the requirements of paragraph 1 or 2:
    1. Depressive disorder, characterized by *five* or more of the following:
        a. Depressed mood;

      b. Diminished interest in almost all activities;
      c. Appetite disturbance with change in weight;
      d. Sleep disturbance;
      e. Observable psychomotor agitation or retardation;
      f. Decreased energy;
      g. Feelings of guilt or worthlessness;
      h. Difficulty concentrating or thinking; or
      i. Thoughts of death or suicide.
2. Bipolar disorder, characterized by *three* or more of the following:
      a. Pressured speech;
      b. Flight of ideas;
      c. Inflated self-esteem;
      d. Decreased need for sleep;
      e. Distractibility;
      f. Involvement in activities that have a high probability of painful
      consequences that are not recognized; or
      g. Increase in goal-directed activity or psychomotor agitation.

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of
mental functioning:
      1. Understand, remember, or apply information.
      2. Interact with others.
      3. Concentrate, persist, or maintain pace.
      4. Adapt or manage oneself.

OR

C. Your mental disorder in this listing category is "serious and persistent;" that is,
you have a medically documented history of the existence of the disorder over a
period of at least 2 years, and there is evidence of both:
      1. Medical treatment, mental health therapy, psychosocial support(s), or a
      highly structured setting(s) that is ongoing and that diminishes the
      symptoms and signs of your mental disorder; *and*
      2. Marginal adjustment, that is, you have minimal capacity to adapt to
      changes in your environment or to demands that are not already part of your
      daily life.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04 (internal citations omitted).

Plaintiff has the burden of proving that he meets or equals all of the criteria of a listed

impairment. *Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012) ("Plaintiff

had the burden of showing that his impairments were equal or equivalent to a listed

impairment.") (citing *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).  A decision that a claimant meets a listed impairment "must be based solely on medical evidence supported by acceptable clinical and diagnostic techniques." *Land v. Sec'y of H.H.S.*, 814 F.2d 241, 245 (6th Cir. 1986) (citing 20 C.F.R. § 404.1526(b)).  In determining whether a claimant satisfies the requirements of a listing, the ALJ must "actually evaluate the evidence, compare it to Section [12.04] of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review.  Without it, it is impossible to say that the ALJ's decision . . . was supported by substantial evidence." *Reynolds v. Comm'r of Soc. Sec.,* 424 F. App'x 411, 415–16 (6th Cir. 2011) (citations omitted).  Additionally, the record evidence must show that Plaintiff's impairment "has lasted or can be expected to last for a continuous period of 12 months."  20 C.F.R. § 404.1525(c)(4).

Here, the ALJ found that Plaintiff does not meet Listing 12.04 because his "mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation" to satisfy Paragraph B of the Listing, and because the evidence "fails to establish the presence of the 'Paragraph C' criteria because [it] does not establish that [Plaintiff] has only marginal adjustment, that is, a minimal capacity to adapt to changes in [Plaintiff's] environment or to demands that are not already part of [Plaintiff's] daily life contemplated in this section."  (R. at 23-24.)  As Plaintiff correctly observes, "the ALJ did not question that [Paragraph A] of the listing was met."  (ECF No. 15 at PAGEID # 708.)  Plaintiff therefore only takes issue with the ALJ's conclusions regarding both the Paragraph B and the Paragraph C criteria.  (*Id.* at PAGEID ## 708-710.)

Regarding the Paragraph B criteria, Plaintiff argues only that the ALJ should have found that Plaintiff had an "extreme limitation," not a "marked limitation," with regard to his

interactions with others.  (*Id.* at PAGEID # 708 ("[Plaintiff] relies on the opinions of Dr.

Nockowitz, Ms. Kinnamon, and Ms. Stanley . . . in arguing that the paragraph B criteria are

met.").)  As previously discussed, however, the ALJ's decision to find "marked limitation" with

regard to Plaintiff's interactions with others was supported by substantial evidence.

Accordingly, Plaintiff's argument regarding the Paragraph B criteria is not well taken.

Regarding the Paragraph C criteria, Plaintiff contends that the ALJ's analysis "contains

no discussion at all of the evidence in the file" and "appears to be boilerplate and is conclusory

without any analysis."  (*Id.*)  Plaintiff cites various treatment records from 2019 before

concluding that "[f]or the ALJ to simply conclude that there was no evidence in the record that

would demonstrate the criteria set forth in Paragraph C demonstrates that the ALJ did not

conduct any meaningful analysis of this section of the listing at all, and thus, her decision cannot

stand."  (*Id.* at PAGEID ## 709-710.)  In response, the Commissioner argues that "the ALJ

considered whether Plaintiff met these criteria and reasonably determined that Plaintiff had not

shown only marginal adjustment, that is, a minimal capacity to adapt to changes in his

environment."  (ECF No. 16 at PAGEID # 729.)  The Commissioner also notes that "multiple

medical sources specifically considered Listing 12.04 and found that [Plaintiff] did not meet this

listing," and argues that "Plaintiff's ability to take care of his own needs, complete a college

degree, comply with treatment, go to church, and shop for himself all indicate that he did not

meet the Paragraph C criteria."  (*Id.*)  In Reply, Plaintiff argues that while the Commissioner

"pointed to several items in the record to argue that the Paragraph C criteria were not met . . .

those arguments come from the Commissioner and not the ALJ."  (ECF No. 17 at PAGEID #

737.)  Plaintiff also notes that while Drs. Murry-Hoffman and Todd did opine regarding Listing

12.04, they offered their opinions in 2018 – before Plaintiff's psychiatric hospitalization and

subsequent treatment – and the ALJ only assigned "little weight" to their opinions because the

record evidence demonstrated that Plaintiff was more limited than they opined.  (*Id.* at PAGEID

# 738.)

The Commissioner's arguments are well taken on this issue, as the Undersigned does not

agree with Plaintiff's representations that the ALJ's discussion regarding the paragraph C criteria

"contains no evidence at all of the evidence in the file," or that the Commissioner's arguments

did not come from the ALJ.   (ECF No. 15 at PAGEID # 708; ECF No. 17 at PAGEID # 737.)

To the contrary, the ALJ expressly discussed the following items from the record, all of which

support the ALJ's conclusions regarding the paragraph C criteria:

- "[Plaintiff] also completed a degree in accounting in five years";

- "[A]ccording to his statements, [Plaintiff] went grocery shopping in stores and to church every week";

- "[Plaintiff] has also reported spending time with others including with his mentor and coworkers in person at the office a couple of times per week and with family on the phone";

- "[Plaintiff] testified he had been involved with the campus ministry Wesley Foundation during college and went to football games"; and

- "[Plaintiff] also testified that he went out to eat with his family on occasion and did okay going to the store and being around people. He also went to yard sales with his mother and could handle being around people in stores."

(R. at 23 (internal citations omitted).)

Although the ALJ discussed these pieces of evidence during her analysis of the Paragraph

B criteria, the ALJ expressly tied this evidence to the Paragraph C criteria by noting (in the

Paragraph C discussion) that the evidence "does not establish that [Plaintiff] has only marginal

adjustment, that is, a minimal capacity to adapt to changes in [Plaintiff's] environment or to

demands that are not already part of [Plaintiff's] daily life **contemplated in this section**."  (R. at

24 (emphasis added).)  This statement directly contradicts Plaintiff's position, and clearly sets

forth the ALJ's thought process.  For this reason, and because the ALJ's conclusion is adequately

supported by substantial evidence throughout the record, Plaintiff's arguments regarding the

Paragraph C criteria are not well taken.  Accordingly, because Plaintiff has failed to demonstrate

how he meets either the Paragraph B or Paragraph C criteria of Listing 12.04, his second

assignment of error is not well taken.

**C.    The ALJ Failed to Explain Why Certain Limitations, Including Plaintiff's Ability to Understand, Remember, or Apply Information, Were Not Incorporated Into the RFC.**

For his third assignment of error, Plaintiff argues that "[d]espite finding moderate

limitations in [understanding, remembering, or applying information], the ALJ did not include

any limitations in her RFC pertaining to Mr. Roden's ability to understand, remember, or apply

information," so "it cannot be said that the ALJ's RFC adequately reflects [Plaintiff's] abilities

and limitations, nor does it represent the most that he can do despite his limitations."  (ECF No.

15 at PAGEID # 710.)  Plaintiff also argues that that two of the three jobs identified by the VE

and cited by the ALJ – data examination clerk and document preparer – are associated with a

reasoning level of three, and "do not appear to reflect the abilities of a claimant with moderate

limitations in understanding, remembering, or applying information."  (*Id.* at PAGEID ## 710-

711.)

In response, the Commissioner argues that Plaintiff's argument "ignores that the RFC

limited Plaintiff to jobs with no more than occasional changes and decision making, both of

which are highly relevant to Plaintiff's ability to understand, remember, and apply information,"

because "[w]ithout having to make decisions more than occasionally, and with only occasional

changes, Plaintiff would have the ability to focus on the tasks before him, and not have to learn

new tasks, remember new tasks, or apply new information more than occasionally."  (ECF No. 16 at PAGEID # 730.)  The Commissioner also argues that "the Paragraph B criteria are not the RFC, and a finding of limitation in the Paragraph B criteria does not necessarily translate, one-for-one, into a concomitant limitation on RFC."  (*Id.* at PAGEID ## 730-731.)  In support, the Commissioner cites *Pinkard v. Comm'r of Soc. Sec.*, No. 1:13-CV-1339, 2014 WL 3389206 (N.D. Ohio July 9, 2014), which held that "the ALJ does not have to include [Listing 12.04] paragraph B finding[s] in his RFC finding. Paragraph B findings under the listings are findings at step three of the sequential evaluation process, and are not RFC findings pertaining to steps four and five of the sequential evaluation process."  (*Id.* at PAGEID # 731.)

In his Reply brief, Plaintiff reiterates that "[i]f [Plaintiff] suffers from moderate limitations in understanding, remembering, and applying information – abilities generally required in order to perform competitive remunerative work – and if the ALJ is required to provide a detailed assessment of a claimant's functional abilities when determining a claimant's RFC, it follows that the ALJ should have either included appropriate limitations pertaining to understanding, remembering, and applying information in her RFC, or should have otherwise explained why no such limitations were necessary."  (ECF No. 17 at PAGEID # 740.)  Plaintiff also urges the Court not to adopt the reasoning of *Pinkard*, because "counsel . . . has not identified any cases in the Southern District of Ohio that have cited or relied upon that case." (*Id.*)  In sum, Plaintiff "simply argues that the ALJ's failure to incorporate limitations pertaining to understanding, remembering, or applying information, in the absence of any explanation or analysis as to why his moderate limitations in this area of functioning would not have any effect on his ability to work, constitutes reversible error."  (*Id.* at PAGEID ## 740-741.)

As a preliminary matter, the Court first notes that *Pinkard* has received acceptance throughout this Circuit (albeit not by this Court specifically), and while the Northern District of Ohio is not necessarily persuasive on this Court, the Sixth Circuit has expressly endorsed *Pinkard*:

> As the ALJ noted, the finding at step three is not an RFC finding. 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00.A. A claimant's RFC is formulated at step four, which "requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C." SSR 96–8p, 1996 WL 374184, at *4 (July 2, 1996). **Thus, an ALJ does not necessarily err in finding that a claimant has "moderate limitations in evaluating her mental impairment under the listings at step three of the sequential evaluation process, and in not including a 'moderate limitation in concentration, persistence, and pace' in [the] residual functional capacity finding at steps four and five."** *Pinkard v. Comm'r of Soc. Sec. Admin.*, No. 1:13CV1339, 2014 WL 3389206, at *10 (N.D. Ohio July 9, 2014).

*Doornbos v. Comm'r of Soc. Sec.*, No. 17-1464, 2017 WL 8948744, at *6 (6th Cir. Dec. 13, 2017) (emphasis added).  The Court therefore finds *Pinkard* to be persuasive.

Following *Doornbos* and accepting *Pinkard* as persuasive authority, however, does not end the subject inquiry – it simply means the ALJ's RFC is not *necessarily* flawed.  The ALJ must still "build an accurate and logical bridge between the evidence and the result" for the Court to uphold the ALJ's decision.  *Canty v. Comm'r of Soc. Sec.*, No. 2:15-CV-2221, 2016 WL 5957679, at *3 (S.D. Ohio Oct. 14, 2016) ("The Court cannot uphold an ALJ's decision, even if there is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.") (internal citations and quotations omitted).  Here, the ALJ did not do so.

When it came to the ALJ's analysis of whether Plaintiff met the criteria of Listing 12.04, for example, the ALJ went to great lengths to explain how Plaintiff has a "moderate limitation" in understanding, remembering, or applying information:

> In understanding, remembering, or applying information, the claimant has a moderate limitation. The claimant alleged that he has difficulty understanding what is said to him and completing tasks. However, the claimant has noted the ability to manage money, and stated that he could prepare simple meals, read, and play video games. He also completed a degree in accounting in five years. In addition, the claimant has denied confusion or mental status changes; and the record shows that the claimant was able to provide information about his health, describe his prior work history, follow instructions from healthcare providers, comply with treatment outside of a doctor's office or hospital, and respond to questions from medical providers; and there is no notation of any issues with the claimant's short- or long-term memory.

(R. at 23 (internal citations omitted).) When it came to the RFC, however, the ALJ inexplicably made no mention of this limitation. (R. at 25-29.) The Commissioner now argues that the ALJ's RFC accommodates Plaintiff's "moderate limitation" in understanding, remembering, or applying information because the ALJ limited Plaintiff to "jobs with no more than occasional changes and decision making." (ECF No. 16 at PAGEID # 730) A plain reading of the RFC, however, confirms that the ALJ included this limitation "so as to provide for low stress," not to allow Plaintiff "to focus on the tasks before him, and not have to learn new tasks, remember new tasks, or apply new information more than occasionally," as the Commissioner suggests. (*Compare* R. at 25 (Plaintiff "should perform best in a position where there is no tandem work and where there are **not more than occasional changes and decision making, so as to provide for low stress**") (emphasis added), *with* ECF No. 16 at PAGEID # 730 ("Without having to make decisions more than occasionally, and with only occasional changes, Plaintiff would have the ability to focus on the tasks before him, and not have to learn new tasks, remember new tasks, or apply new information more than occasionally. Thus, this limitation fully accounts for any limitation Plaintiff has in that area of functioning.").)

Also conspicuously absent from the Commissioner's argument is any citation to the ALJ's decision which could explain the inherent inconsistency between the "moderate

limitation" for purposes of Listing 12.04 and the lack of any restriction in the RFC. By focusing

its entire rebuttal on the applicability of *Pinkard* and the conclusory, yet unsupported, statement

that "the ALJ's decision certainly meets [the substantial evidence] standard in this case," the

Commissioner has implicitly conceded that the ALJ's decision fails to allow this Court to trace

the path of her reasoning regarding Plaintiff's ability to understand, remember, or apply

information. Such failure constitutes reversible error. *Johnson v. Comm'r of Soc. Sec. Admin.*,

No. 3:20-CV-99, 2021 WL 5177818, at *3 (S.D. Ohio Nov. 8, 2021) ("[B]y failing to explain

why certain limitations were not incorporated into the RFC, an ALJ prevents the reviewing court

from conducting a meaningful review to determine whether substantial evidence supports his

decision."); *Lindsey v. Comm'r of Soc. Sec.*, No. 2:18-CV-18, 2018 WL 6257432, at *5 (S.D.

Ohio Nov. 30, 2018), *report and recommendation adopted*, No. 2:18-CV-018, 2019 WL 133177

(S.D. Ohio Jan. 8, 2019) ("[T]he ALJ's failure to provide such an explanation requires remand

because it prevents this Court from conducting meaningful review to determine whether

substantial evidence supports his decision."); *see also Allen v. Astrue*, No. 5:11CV1095, 2012

WL 1142480, at *8 (N.D. Ohio Apr. 4, 2012) ("Because the ALJ did not provide an analysis that

is sufficiently specific, Allen's argument that the ALJ failed to properly articulate the RFC

calculation is well-taken. The Court is unable to trace the path of the ALJ's reasoning.");

*Commodore v. Astrue*, No. 10–295, 2011 WL 4856162, at *4, 6 (E.D. Ky. Oct. 13, 2011)

(remanding action "with instructions to provide a more thorough written analysis," where the

ALJ failed to articulate the reasons for his RFC findings such that the Court could not "conduct a

meaningful review of whether substantial evidence supports the ALJ's decision"). Accordingly,

Plaintiff's third assignment of error is well taken.

## VII.  CONCLUSION

Based on the foregoing, it is therefore **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** under Sentence Four of § 405(g).  It is **FURTHER RECOMMENDED** that on remand, the ALJ must provide a more thorough analysis regarding how Plaintiff's moderate limitations in understanding, remembering, and applying information are accounted for in the RFC – or, if they are not accounted for, the ALJ must explain why.

## VIII.  PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report an\d Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994

(6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date:  <u>December 27, 2021</u>                                    <u>   /s/ *Elizabeth A. Preston Deavers*</u>
                                                          Elizabeth A. Preston Deavers
                                                          United States Magistrate Judge